**Don B. ROBERSON, Appellant,**

v.

**Patrick BEEMAN and Norton, Pollard & Norton, Inc., P.C., Respondents.**

**No. WD 42586.**

Missouri Court of Appeals,
Western District.

June 5, 1990.

Don B. Roberson, pro se.

Michael A. Childs, Kansas City, for respondents.

Before NUGENT, C.J., FENNER, J., and WASSERSTROM, Senior Judge.

FENNER, Judge.

Donald B. Roberson appeals an order granting a Motion for Summary Judgment in favor of Patrick Beeman and Norton, Pollard & Norton, Inc., P.C., upon Roberson's action claiming damages for libel.

The case at bar has as its basis another case where Roberson represented a Mr. and Mrs. Cohen and a Mr. and Mrs. Katz. These persons were also represented by David R. Smalley in the underlying action. That action, captioned *Melvin Cohen, et al. v. Montgomery Ward & Company, et al.*, was ultimately settled and it is that settlement which led to the controversy at bar.

The case filed by Mr. Roberson on behalf of the Cohens and Katzs was a subrogation action wherein Roberson also represented Safeco Insurance Company, whose rights were subrogated to the Cohens and Katzs. Mr. Smalley was acting on behalf of the

Cohens and Katzs as their personal attorney.

Apparently, Mr. Roberson negotiated a settlement on behalf of the Cohens and Katzs for $68,000. In connection with this settlement Mr. Smalley sent Mr. Cohen a letter which, in pertinent part, read as follows:

You and I have wondered for a long time how it could be that Roberson could 'settle this case behind your back', without getting any authority whatsoever from you to do so and without checking with you first on the terms by which the settlement proceeds would be divided between Safeco and you. I now have the answer to that question: according to Roberson, when you and Mrs. Cohen (and of course Mr. & Mrs. Katz) received insurance money from Safeco, all of you signed a *full and complete assignment* of *ALL* your rights against Montgomery Ward (or against anyone else for that matter) to Safeco. I have not found a copy of any such assignment in the file you gave me, although I am checking the file again to see if perhaps it was hidden some place among other papers which appeared innocuous. . . .

At any rate, if this is true, and if you and the Katz family has indeed executed a complete assignment to Safeco, then, if that is the case, you absolutely did not have the right to file a lawsuit against Montgomery Ward in the first place. . . .

Sometime after receipt of this letter the Cohens and Katzs were referred to the law firm of Norton, Pollard & Norton, P.C. Mr. Patrick Beeman, a member of that firm, was presented the above referenced letter as well as a copy of a Proof of Loss document containing the assignment language referred to in the letter. The Proof of Loss indicates payment by Safeco under its policy with the Cohens and Katzs of $64,122.45. The pertinent language of the Proof of Loss stated:

In consideration of payment of this claim I give the company my rights of recovery up to the amount paid, and I will execute all documents required of me and cooperate with the company in prosecuting all actions to effect recovery. . . .

In deposition, Mr. Beeman indicated that, with regard to the Proof of Loss, it was his understanding that Safeco paid his clients, the Cohens and Katzs, approximately $65,-000, and that they wanted to sue for more. Beeman stated that in his opinion his clients were still entitled to pursue their personal losses above what Safeco paid.

Beeman sent demand/lien letters to Roberson, Smalley and Safeco, believing Roberson had settled the case without the authorization of the Cohens and Katzs.

The first letter written by Beeman was to Roberson and Smalley advising them that he had been retained to represent the Cohens and Katzs in a claim against Roberson and Smalley for negligent representation. Beeman stated the substance of his clients' claim to be that they were misinformed as to the nature and extent of their rights in regard to the settlement with Safeco and that the advice given by Roberson and Smalley was a misrepresentation of the documentation involved. Demand was made for damages in the amount of $60,000. Also the letter informed Roberson and Smalley of an attorney's lien for the claim by the Cohens and Katzs pursuant to § 484.140, RSMo 1986.

On the same day Beeman wrote a letter to Safeco and enclosed a copy of the letter to Roberson and Smalley. The letter indicates Beeman's belief that Roberson acted as agent for Safeco. A demand was made on Safeco for $60,000. Beeman indicated his belief that there existed a potential cause of action for fraud against Safeco based upon misinformation given by Roberson and the manner with which he dealt with the Cohens and Katzs. Beeman also gave notice of an attorney's lien to Safeco.

Sometime after the letters were written the case was referred by Beeman and Norton, Pollard & Norton, P.C., back to Attorney Richard Duggan, who initially referred the case to them. Duggan filed suit against Safeco on behalf of the Cohens and Katzs alleging liability due to actions of Roberson as Safeco's agent. That suit is presently pending.

Roberson filed his petition against Beeman and Norton, Pollard & Norton, P.C., alleging basically that the letters sent by Beeman to himself, Smalley and Safeco constituted defamatory and libelous statements resulting in damage to his professional reputation.

Following a great deal of discovery, Beeman and Norton, Pollard & Norton, P.C., filed their Motion for Summary Judgment alleging, among other things, that they were protected by the doctrine of qualified privilege and, therefore, entitled to judgment as a matter of law. The motion was granted.

Roberson presents one point on appeal. He argues that he made a submissive [sic] case against Beeman and Norton, Pollard & Norton, P.C., and, therefore, the motion for summary judgment was improvidently granted.

■ When reviewing a ruling on a motion for summary judgment, an appellate court must scrutinize the record in the light most favorable to the party against whom the motion was filed, according to that party all reasonable inferences which may be drawn from the evidence. Summary judgment is a drastic remedy and is inappropriate unless the prevailing party has shown by unassailable proof that he is entitled to judgment as a matter of law. The burden is on the party moving for summary judgment to demonstrate that there is no genuine issue of fact. A genuine issue of fact exists when there is the slightest doubt about a fact. *Gast v. Ebert*, 739 S.W.2d 545, 546 (Mo. banc 1987) (citations omitted).

■ Libel consists of the malicious defamation of a person made public by any printing, writing, sign, picture, representation or effigy tending to provoke that person to wrath or expose him to public hatred, contempt or ridicule, or to deprive him of the benefits of public confidence and social intercourse. *Swafford v. Miller*, 711 S.W.2d 211, 213 (Mo.App.1986). At common law, causes of action for libel and slander developed to protect an individual against harm to his or her reputation. *Henry v. Halliburton*, 690 S.W.2d 775, 779

(Mo. banc 1985). Modern law includes these causes of action under the single tort of defamation, while retaining many of the common law characteristics of each. *Id.* Citing the Restatement (Second) of Torts § 559, the Missouri Supreme Court in *Henry*, 690 S.W.2d at 779, stated that " '[a] communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.' " *Id.* The Court went on to recognize that the defendant has certain types of defenses, one of which is the absolute privilege for statements made during judicial proceedings. *Id.* at 780. Another is the conditional or qualified privilege.

■ A privileged communication or statement, in the law of libel and slander, is one which, except for the occasion or circumstances under which it is made, would be defamatory and actionable. See generally, Annot., 23 A.L.R.4th 932 (1983). Such a privilege generally protects judges, counsel, parties, and witnesses from responsibility for libel or slander for words, otherwise defamatory, published in the course of judicial proceedings, provided that the statements are pertinent or relevant to the case. *Id.* As previously indicated, Missouri recognizes this privilege. *Henry*, 690 S.W.2d at 770.

Independent research has revealed no Missouri case addressing the issue of whether alleged defamatory extrajudicial communications made by attorneys to persons other than the alleged defamed party or its agents, in the preparation or investigation of pending or anticipated civil judicial proceedings, are protected by a privilege with respect to the law of libel and slander.

Under the present circumstances, this court finds that the respondents are protected by a conditional or qualified privilege. The scope of the privilege, as set forth by the Missouri Supreme Court in *Henry v. Halliburton*, 690 S.W.2d at 780–81, generally encompasses:

... all statements made bona fide in performance of a duty, or with a fair and reasonable purpose of protecting the interest of the person making them, or the interest of the person to whom they are made. A communication made bona fide upon any subject matter in which the party communicating has an interest, or in reference to which he has a duty, is privileged, if made to a person having a corresponding interest or duty, although it contain criminatory matter, which, without this privilege, would be slanderous and actionable. But in this definition of a privileged communication, the word 'duty' cannot be confined to legal duties, which may be enforced by indictment, action, or mandamus, but must include moral and social duties of imperfect obligation.

\* \* \* \* \* \*

In 36 C.J. 1241, it is said: 'qualified privilege exists in a larger number of cases than does absolute privilege. It relates more particularly to private interests; and comprehends communications made in good faith, without actual malice, with reasonable or probable grounds for believing them to be true, upon a subject matter in which the author of the communication has an interest, or in reference to which he has a duty, public, personal, or private, either legal, judicial, political, moral, or social, made to a person having a corresponding interest or duty. Briefly stated, a qualifiedly privileged communication is a defamatory communication made on what is called an occasion of privilege without actual malice. As to such communications there is no civil liability.' *Id.*

See also, *Rucker v. KMART Corp.*, 734 S.W.2d 533, 535 (Mo.App.1987) and *Estes v. Lawton–Byrne–Bruner Insurance Agency Co.*, 437 S.W.2d 685, 690 (Mo.App.1969).

■ If the defense of qualified privilege is available, plaintiff bears the burden of establishing express malice to overcome the defense. *Estes*, 437 S.W.2d at 685, 691. The question of bad faith or malice is for the jury where such evidence is presented. *Id.*

■ Even assuming that the subject statements herein were defamatory, they were subject to a qualified privilege, falling squarely within the scope of what that privilege contemplates. The record reveals no evidence of malice or bad faith.

A review of the letters written by Beeman herein and the communication contained therein, reveals that a judicial proceeding on behalf of the Cohens and Katzs was contemplated in good faith and the contents of the letter related to the proposed litigation. A petition was subsequently filed on behalf of the Cohens and Katzs alleging malpractice of Roberson. That the petition was not filed by Beeman is not relevant.

If a summary judgment is sustainable on any theory, the judgment of the trial court must be sustained. *Roberts Fertilizer, Inc. v. Steinmeier*, 748 S.W.2d 883, 886 (Mo.App.1988). Because of the holding herein, it is unnecessary to determine whether there exists genuine issues of material fact as to Roberson's libel action. The communication was subject to a qualified privilege, thus no libel action would lie. Summary judgment was sustainable upon the basis of the privilege and, therefore, is affirmed.

All concur.