**STATE of Missouri ex rel. Laurie Kennett WILSON, Relator,**

v.

**The Honorable J. Michael BROWN, Judge, 30th Judicial Circuit, Polk County, Missouri, Respondent.**

No. 19908.

Missouri Court of Appeals, Southern District, Division Two.

April 13, 1995.

Lisa C. Henderson, Buffalo, for relator.

Ralph W. Gilchrist, Bolivar, for respondent.

GARRISON, Presiding Judge.

Relator (Wife) contends that Respondent should be ordered to dismiss, for lack of jurisdiction, a suit for dissolution of marriage filed by her husband in Polk County, Missouri because of her pending dissolution action in Texas, or in the alternative to cease further proceedings so long as the Texas suit is pending. The primary issue argued by the parties is whether the Missouri or Texas court has jurisdiction to decide child custody issues.

■ Preliminarily, we note that Husband has filed a motion to dismiss or alternatively a motion to strike Wife's statement of facts and argument from her brief for failure to comply with Rule 84.04(c) and (h).[1] He contends, correctly, that Wife's brief contains violations of the Rule 84.04(c) requirement that the statement of facts "shall be a fair and concise statement of the facts ... without argument," and Rule 84.04(h) which requires that "[a]ll statements of fact and argument shall have specific page references to the legal file or the transcript." He also contends that Wife failed to file transcripts of pertinent court proceedings. With reference to the latter complaint, we note that Rule 84.24(g) provides:

> The petition for the writ, together with the suggestions in support thereof, any exhibits accompanying the petition, the writ and return of service thereon, the answer made to the petition for the writ, and all other papers, documents, orders, and records filed in the appellate court shall constitute the record, and no record need be prepared in the appellate court.

Additionally, Husband could have filed any other portions of the record deemed necessary for a complete review of the issue. See Rule 81.12(c).

■ We do not overlook or condone the fact that Wife's statement of facts contains statements which are both argumentative and unsupported by the record presented to us. The same is true of her failure to make

---

1. All references to rules are to Missouri Rules of Court, V.A.M.R., and all references to statutes are to RSMo 1994, V.A.M.S.

specific references to the record in support of statements contained in her brief. We are, however, desirous of deciding cases on the merits where possible and will do so in this case. Husband's motions are, therefore, overruled. We do note, however, that Wife also raises matters in the argument portion of her brief which are not within the scope of her point relied on. Our review is restricted to the issue raised in the point relied on. *See Thummel v. King,* 570 S.W.2d 679, 685 (Mo. banc 1978); *In Interest of W.S.M.,* 845 S.W.2d 147, 149, n. 1 (Mo.App.W.D.1993).

The facts involved in this case are lengthy and detailed. Summarized, they are as follows:

Wife filed a dissolution of marriage action in Polk County, Missouri on April 19, 1994. Her petition alleged, among other things, that the two children born of the marriage (then ages two and ten respectively) had resided with her and Husband at Bolivar, Missouri from October 1, 1993 until the filing of the petition. According to the meager record before us, however, it appears that Wife had actually taken the children to Texas three days earlier, on April 16, 1994. After having filed an answer, Husband filed a motion seeking temporary custody, which the court sustained effective August 1, 1994. The record indicates that the children remained in the actual custody of Husband in Missouri from at least August 1, 1994 until the time of the proceedings which are now before this court.

Wife filed an amended petition on August 24, 1994 seeking permission to remove the children to Texas. In that petition she alleged that "[i]n accordance with Section 452.480" the children had resided with her and Husband at Bolivar, Missouri during the six months preceding the filing of the petition in that suit. Thereafter, Husband filed a motion for leave to file a Counter–Petition For Dissolution of Marriage which was

scheduled to be heard on October 20, 1994 at 4:00 P.M. At 2:50 P.M. on October 20, however, Wife filed a Dismissal of the action pursuant to Rule 67.02(a).[2] Five minutes later she filed an "Original Petition For Divorce" in the District Court of Wise County, Texas in which she listed the present residence of the children as Bridgeport, Texas.[3] At 4:25 P.M. on the same day, Husband filed the subject suit for dissolution of marriage in the Circuit Court of Polk County, Missouri in which he sought primary custody of the children. Thereafter, Husband filed an amended petition which contained allegations that Missouri was the "home state" of the children from their births except for a period of April 16, 1994 to June 1, 1994, during which time Wife had the children in Texas; that Wife had filed the action in Texas; that it was in the children's best interests for the Circuit Court of Polk County, Missouri to assume jurisdiction; and that he and the children had significant connections with Missouri where there was substantial evidence concerning their "present and future care, protection, training and personal relationships."

Wife filed a Special Entry of Appearance For Purpose of Contesting Jurisdiction and a Motion To Dismiss Husband's suit claiming, among other things, that jurisdiction was vested in the Texas court because of the suit previously filed there. After the trial court overruled the Motion To Dismiss, Wife filed a Petition For Writ of Mandamus or Alternatively For Writ Of Prohibition with this court. Our Preliminary Order In Prohibition followed. We now hold that our preliminary writ was improvidently granted as to the child custody issues and we quash the same to that extent but otherwise make it absolute.

Wife argues in this court that because of Rule 67.02(a) the voluntary dismissal of her Missouri suit was a matter of right requiring

---

**2.** Rule 67.02(a) provides in pertinent part: "Except as provided in Rule 52, a civil action may be dismissed by the plaintiff without order of the court anytime prior to the introduction of evidence at trial." Wife argues that pursuant to Rule 67.02(a) she was entitled to dismiss her suit as a matter of right because it occurred before the introduction of evidence at trial and that the dismissal was effective upon filing without the

necessity of a court order. Husband does not dispute Wife's interpretation or application of Rule 67.02(a) in the instant case.

**3.** The record before us indicates agreement of the parties that both of the children were then in the actual custody of Husband in Missouri.

no court order. As a result, she argues that the dismissal of that suit was effective on its filing, five minutes before she filed her dissolution action in Texas. The import of this argument is that the Texas court acquired exclusive jurisdiction of the controversy because no suit was pending in Missouri when it was filed.

Wife proceeds to base much of her argument on §§ 452.440–.550, known as the Uniform Child Custody Jurisdiction Act (Uniform Act), which was adopted in Missouri in 1978. She also acknowledges in the Suggestions in support of her petition filed with this court that the Uniform Act had been adopted in Texas.[4] The Uniform Act provides for resolution of conflicts in jurisdiction between the courts of different states in actions involving child custody. *See State ex rel. Laws v. Higgins,* 734 S.W.2d 274, 277 (Mo.App.S.D. 1987). The Missouri version of the Uniform Act provides, in pertinent part:

452.450. Jurisdiction.—1. A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(1) This state:

(a) Is the home state of the child at the time of commencement of the proceeding; or

(b) Had been the child's home state within six months before commencement of the proceeding and the child is absent from this state for any reason, and a parent or person acting as parent continues to live in this state; or

. . . .

"Home state" is defined in § 452.445(4) as:

the state in which, immediately preceding the filing of custody proceeding, the child lived with his parents, a parent, an institution; or a person acting as parent, for at least six consecutive months. . . . Periods of temporary absence of any of the named persons are counted as part of the six-month or other period;

The Texas version of the Uniform Act has similar provisions. V.T.C.A., Family Code §§ 11.52 and 11.53.

▮ The general rule is that a court's jurisdiction over a case depends on the facts existing at the time jurisdiction is invoked. *Davis v. Davis,* 799 S.W.2d 127, 131 (Mo. App.W.D.1990). As it relates to jurisdiction of child custody issues based on "home state" status, this is when the petition is filed. *Id.* at 132. *See also In Re Marriage of Welsh,* 714 S.W.2d 640, 649 (Mo.App.S.D.1986), and § 452.450.1(1)(a) and (b). In the instant case, the record presented to us indicates that the two children lived with their parents in Polk County, Missouri from birth until Wife took them to Texas on or about April 16, 1994, three days before filing her original petition for dissolution in Missouri on April 19. In that petition, she alleged:

That the places where the minor children have lived within the last six months, and the names and present addresses of the persons with whom said children have lived during that period are as follows:

(a) From October 1, 1993, to the present date, said children have resided with Petitioner and Respondent at Route 4, Box 150, Bolivar, Missouri 65613.

The record indicates that at some point between June 1, 1994 and August 1, 1994 Wife returned the children to Missouri.[5] Pursuant to Husband's motion, the court entered an order on July 26, 1994 awarding him temporary custody of the children effective August 1, 1994. We also glean from the record that the children remained with Husband at least from that time until Wife sought a writ of prohibition or mandamus in this court.

As indicated earlier, in October 1994 Wife dismissed her Missouri action and filed the suit in Texas. Husband filed the subject suit

---

**4.** Texas adopted the Uniform Act in 1983 with modifications which are inconsequential as they relate to this opinion. *See* V.T.C.A., Family Code §§ 11.51 to 11.75.

**5.** An amended petition filed by Husband alleged that the children had been in Missouri from birth

to April 16, 1994, from June 1 to July 11, 1994, and from August 1, 1994 until the time of that filing on October 25, 1994. Wife, in her brief and in an affidavit in the Texas case, stated that the children were in Texas with her from April 16, 1994 until August 1, 1994.

in Polk County later the same day. In response, Wife filed a motion to dismiss Husband's Missouri suit claiming that jurisdiction of the matter rested with the Texas court because of the suit pending in that state. Apparently in accordance with § 452.465,[6] the judge in Polk County, Missouri (Judge Brown) contacted the court in Wise County, Texas concerning the matter of jurisdiction over the child custody issues. In a letter dated October 27, 1994, Judge Brown sent the Texas judge copies of documents from the Missouri cases and said, "[h]opefully, we will be able to resolve the jurisdictional problems, particularly as regards the children under the UCCJA." On November 4, 1994, the Texas judge wrote Judge Brown saying that a hearing had been held in the Texas court on October 31, 1994 and further proceedings were stayed pending a determination of the appropriate jurisdiction under the Uniform Act. At that time, the Texas judge also told Judge Brown:

It is my feeling that if your Court assumes jurisdiction under your new case . . . that I should decline jurisdiction on the theory that your Court would be the appropriate forum since obviously the children have lived in Missouri from birth until the present, except for that period of April 19, 1994, [sic] through August 1, 1994.

If your Court notifies me of your intention to assume jurisdiction of the children, I will decline jurisdiction.

On November 14, 1994, Judge Brown wrote the Texas judge saying that he had, on November 2, 1994, overruled Wife's motion to dismiss Husband's Missouri suit. He also said:

I concur with your determination that Missouri is the appropriate jurisdiction to determine custody of the children in this matter. Accordingly, this letter will serve as notification to you that I have and will continue to assume jurisdiction of the custody of the minor children in the above-styled case.

The trial court later received a copy of an order entered by the Texas court in which it declined jurisdiction "of all matters relating to the custody of the minor children herein."

■ In our view, the Circuit Court of Polk County, Missouri has jurisdiction to proceed concerning the issues of child custody. It is true that the children had not been physically present in Missouri for a continuous period of six months prior to October 20, 1994 when Husband's suit for dissolution was filed in Polk County, because Wife had them in Texas part of that time. By way of background, however, various pleadings of the parties indicate that the children were residents of this state for more than six months prior to the filing of Wife's original dissolution action in Polk County. At that time, Missouri was the "home state" of the children pursuant to § 452.450.1(1)(a). In fact, Wife in effect admitted that in her original and amended petitions for dissolution.

We believe the absence of the children from April 16, 1994 until they were returned to this state between June 1 and August 1 was a temporary absence within the meaning of § 452.445(4).[7] Under that statute, such period would be considered a part of the prior and subsequent residency period in Missouri for the purpose of determining

---

6. Section 452.465 provides, in pertinent part:

1. A court of this state shall not exercise its jurisdiction under sections 452.440 to 452.550 if, at the time of filing the petition, a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with sections 452.440 to 452.550, unless the proceeding is stayed by the court of that other state for any reason.

2. . . . If the court has reason to believe that proceedings may be pending in another state, it shall direct an inquiry to the state court administrator or other appropriate official of that state.

3. If the court is informed during the course of the proceeding that a proceeding concerning the custody of the child was pending in another state before the court assumed jurisdiction, it shall stay the proceeding and communicate with the court in which the other proceeding is pending in order that the issue may be litigated in the more appropriate forum and that information may be exchanged in accordance with sections 452.530 to 452.550.

7. Section 452.445(4) provides in part that "[p]eriods of temporary absence of any of the named persons are counted as part of the six-month or other period."

"home state" status. That interpretation also results in Missouri being their "home state" at the time Husband's suit was filed in Missouri in October, at which time he had actual physical custody of the children in Missouri and the children had been physically present in this state continuously since at least August 1, 1994. *See Glanzner v. State, DSS,* 835 S.W.2d 386, 390 (Mo.App.E.D. 1992).

The absence of the children from Missouri between April and sometime between June and August would not have terminated Missouri's status as "home state" for another reason. It is clear that Missouri was the "home state" of the children prior to their removal to Texas. Section 452.450.1(1)(b) provides that jurisdiction of a "home state" continues for six months even though the child may be in another state, so long as one parent, as was true in the instant case, continues to live in this state. *See Dobyns v. Dobyns,* 650 S.W.2d 701, 706 (Mo.App.W.D. 1983). When they returned to Missouri at least by August 1, 1994, the Missouri "home state" status still applied.

There is also no indication in the record that any state other than Missouri had acquired "home state" status pursuant to the Uniform Act. Certainly, Texas was never the "home state" of the children under either the Missouri or Texas version of the Uniform Act because they never resided there for six consecutive months. *See Elbert v. Elbert,* 833 S.W.2d 884, 887 (Mo.App.E.D.1992). Pursuant to § 452.450.1(4), Missouri has jurisdiction to determine custody if:

> It appears that no other state would have jurisdiction under prerequisites substantially in accordance with subdivision (1), (2), or (3), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and it is in the best interest of the child that this court assume jurisdiction.

Finally, while Wife argues in her brief that Texas has jurisdiction pursuant to the Uniform Act,[8] she acknowledges that likewise Missouri has such jurisdiction.

Accordingly, we hold that the Circuit Court of Polk County has jurisdiction to proceed with the child custody issues raised in Husband's suit. This result is in accordance with the purpose of the Uniform Act to create a preference, concerning jurisdiction of custody issues, for the state with the most significant connections with the child and family. *See Piedimonte v. Nissen,* 817 S.W.2d 260, 270 (Mo.App.W.D.1991).

Husband disputes the jurisdiction of the Texas court only as to the issues of child custody. He concedes in his brief that the Texas court has jurisdiction as to the "dissolution of marriage." Although it is not preferred, there is precedent for the bifurcated resolution of a domestic relations case. *See Bell v. Bell,* 849 S.W.2d 194 (Mo.App.W.D. 1993). Our preliminary writ is, therefore, quashed as to child custody but otherwise is made absolute.

CROW and PREWITT, JJ., concur.

---

8. She does not explain how this conclusion was    reached.