Peter H. REA, Plaintiff–Appellant,

v.

Nancy MOORE, Individually and as Personal Representative of the Estate of Clovis Moore, Defendant–Respondent.

No. 23795.

Missouri Court of Appeals, Southern District, Division Two.

Jan. 25, 2002.

Motion for Transfer and Denied Feb. 13, 2002.

---

Peter H. Rea, pro se.

Paul Benton Weeks, III, Springfield, for respondent.

Before GARRISON, P.J., PREWITT, J., and RAHMEYER, J.

PER CURIAM.

Peter H. Rea ("Appellant") contends on appeal that the trial court abused its discretion by (1) entering a judgment against him for sanctions based on an inherent power to do so, and failing to follow the statutory requirements of Rule 55.03,[1] and (2) setting aside a previously entered judgment without specifying good cause for doing so. For the reasons outlined below, we affirm the trial court's decisions.

This case stems from an action filed by Appellant in December 1987 in which he claimed, in pertinent part, that he had loaned or advanced $49,000 to Clovis and Nancy Moore ("Respondent").[2] Respondent maintained that the amounts paid by Appellant were not loans, but rather money paid for an option to purchase property from Respondent. An amended petition filed by Appellant on March 28, 1991 contained five counts, three of which related to the $49,000. The fourth count was a claim for trespass to personal property, and the fifth count involved another $25,000 debt Respondent allegedly owed Appellant. Respondent's answer included a counterclaim seeking damages resulting from Appellant allegedly failing to keep a bull fenced within his own property.

On January 13, 1994, the trial judge entered what he termed a final judgment, finding for Appellant on the three counts involving the $49,000, which the court determined was "as a result of loans." The judgment also noted that Appellant dismissed the fourth count without prejudice. Respondent appealed to this Court and that appeal was dismissed for lack of ap-

---

1. Unless otherwise noted, all references to rules are to Missouri Rules of Civil Procedure (2001).

2. Clovis Moore passed away in 1994 or 1995 and thereafter Nancy Moore was listed in the litigation as an individual and personal representative of the estate of Clovis Moore.

pellate jurisdiction based on our determination that the order was not a final judgment, in that neither Appellant's fifth count nor Respondent's counterclaim had been resolved and there had been no finding of "there is no just reason for delay" as authorized by Rule 74.01(b). *See Rea v. Moore*, 891 S.W.2d 874, 875 (Mo.App. S.D. 1995).

On April 17, 1998, Respondent filed a letter and supporting documents with the trial court suggesting that Appellant had committed fraud on the court. She alleged that documents from another case in which Appellant was a party indicated the money Appellant claimed was paid to Respondent as loans was in fact money Appellant had paid Respondent toward the purchase of Respondent's property. Based on that information, Respondent filed a motion on June 1, 1998 to set aside the judgment previously entered in the case. A hearing was held on August 26, 1998, and on September 22, 1998, the trial court entered an order in which Appellant's remaining unresolved count and Respondent's counterclaim were dismissed for failure to prosecute. The order also granted Respondent's motion to set aside the previously entered judgment that involved the three counts relating to the $49,000 in alleged loans.

On September 28, 1998, Respondent filed a motion for sanctions against Appellant "pursuant to [Rule] 55.03 and the inherent powers of [the][c]ourt." In the motion, Respondent accused Appellant of committing perjury and of attempting to perpetrate a fraud on the court by filing a lawsuit that was "false, fraudulent and without basis in fact." On April 6, 2000, Appellant sought to dismiss all pending claims without prejudice. Appellant later filed a petition for writ of prohibition with this Court to prevent the trial court from hearing Respondent's motion for sanctions.

Appellant's petition was denied on June 27, 2000. Appellant also filed a writ of prohibition with the Missouri Supreme Court, which was denied on June 29, 2000.

The trial court held a hearing on the motion for sanctions on June 30, 2000. On July 3, 2000, the trial court entered a judgment for sanctions finding Appellant made false allegations in his petition, made false statements in affidavits, and gave perjured testimony regarding the transactions Appellant claimed were loans. The trial court concluded that given its "inherent power, right and duty to take that action which is necessary to protect the integrity of the judicial process[,] .... [w]hen false pleadings are filed, false affidavits are filed or perjured testimony [is] given it is the duty of the [c]ourt to impose sanctions on the offending party or other participant." Further, the court determined that although Respondent did receive benefit from the money paid by Appellant, such did "not excuse or justify [Appellant's] acts of fraud on the [c]ourt." Appellant was ordered to pay $5,000 to the registry of the court as a sanction for the false pleadings, false affidavits and perjured testimony. The court also rejected Appellant's attempted voluntary dismissal of his claims, instead dismissing all of Appellant's remaining claims with prejudice. Here, Appellant identifies the judgment or order appealed from as the judgment for sanctions entered July 3, 2000.

Appellant's first point on appeal charges that the trial court abused its discretion by invoking its inherent powers to impose sanctions for filing a frivolous pleading because Respondent initiated the sanctions pursuant to Rule 55.03 and the requirements of that rule were not met. Specifically, Appellant claims that the trial court did not have jurisdiction to impose sanctions because the safe harbor provision of Rule 55.03, under which a party must wait

thirty days after serving the motion on the party against whom sanctions are sought before filing the motion with the court, was not met. *See* Rule 55.03(c)(1)(A); *Robin Farms, Inc. v. Bartholome*, 989 S.W.2d 238, 250 (Mo.App. W.D.1999).

We review under an abuse of discretion standard, since "[a] trial court ... may, at its discretion, impose sanctions when they are justified, considering the conduct of the parties and counsel." *Foster v. Kohm*, 661 S.W.2d 628, 631 (Mo.App. E.D.1983). This is the same standard used when a court imposes sanctions based on Rule 55.03(c). *See Brown v. Kirkham*, 23 S.W.3d 880, 882 (Mo.App. W.D.2000). "An abuse of discretion occurs when the court's order is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Id.* at 882–83.

Before discussing our analysis of Appellant's first point, we note that the point itself defines the boundary of our review. *See State v. Stringer*, 36 S.W.3d 821, 822 (Mo.App. S.D.2001). "The scope of the issue for determination on appeal is that framed in the point relied on." *Id.* Within the argument portion of his brief, Appellant raises issues outside the scope of the point relied on. "Our review is restricted to the issue[s] raised in the point relied on." *State ex rel. Wilson v. Brown*, 897 S.W.2d 171, 173 (Mo.App. S.D.1995).

In Appellant's first point, he claims that the trial court abused its discretion by invoking its inherent powers to impose sanctions for filing a frivolous lawsuit. However nowhere in the motion for sanctions was Appellant accused of filing a frivolous lawsuit and nowhere in the judgment for sanctions did the trial court conclude that sanctions were necessary based on Appellant's filing of a frivolous lawsuit.

In fact, there was no finding that Appellant had filed a frivolous lawsuit. Within the judgment for sanctions, the trial court rendered findings that Appellant had filed false pleadings and false affidavits as well as given perjured testimony. Further, the trial court based the sanctions on the false pleadings, false affidavits, perjured testimony and Appellant's "acts of fraud." Therefore, there is no support in the record for Appellant's contention as stated in his point relied on.

In addition, Appellant's claim that only Rule 55.03 can be used by the trial court in its imposition of sanctions or that Rule 55.03 was the only basis on which Respondent made its motion for sanctions is incorrect. Appellant is correct that Missouri law is stringent in its requirement that the safe harbor provision of Rule 55.03(c) be followed when sanctions are imposed for violations of Rule 55.03(b). *Robin Farms*, 989 S.W.2d at 250. "This rule prohibits a movant for sanctions from filing its motion with the trial court before the thirty-day period after serving the motion on the other party has expired." *Id.* The intention of the safe harbor provision is to allow the party against whom sanctions are sought an opportunity to correct violations of Rule 55.03(b), "thereby conserving judicial resources if such corrective action is taken." *Id.* Appellant is also correct that the safe harbor provision of that Rule was not followed here. However, the first line of Respondent's motion for sanctions states that the motion is made pursuant to Rule 55.03 *and the inherent powers of the court*. The judgment for sanctions clearly indicates on its face that the trial court was not proceeding pursuant to Rule 55.03, but rather it was relying on its responsibility to impose sanctions for false pleadings, false affidavits and perjured testimony on its "inherent power, right and duty to take that

action which is necessary to protect the integrity of the judicial process."

■ Although Missouri cases do not seem to address the issue of the appropriateness of using the court's inherent power to impose sanctions versus the use of Rule 55.03, Missouri case law does provide support for the use of a court's inherent powers to address particular issues before it. *See Higgins v. Director of Revenue*, 778 S.W.2d 24, 26 (Mo.App. S.D.1989). Missouri courts are cautioned to exercise their inherent powers "sparingly, wisely, temperately, and with judicial self-restraint." *Id.* Any sanctions imposed under the court's inherent powers should be limited to those situations in which it is "reasonably necessary to preserve the courts' existence and protect it in the orderly administration of its business." *Id.*

Federal courts have addressed the interplay between Federal Rule of Civil Procedure 11 (2001) and a court's inherent power. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 50, 111 S.Ct. 2123, 2136, 115 L.Ed.2d 27, 49 (1991); *Pope v. Federal Express Corp.*, 138 F.R.D. 675, 681–83 (W.D.Mo.1990). Since Federal Rule 11 and Missouri Rule 55.03 are nearly verbatim, the analyses and conclusions of these cases are instructive to the analysis here.

In *Chambers*, the United States Supreme Court found that the district court did not abuse its discretion when it resorted to its inherent powers to impose sanctions for bad faith conduct. 501 U.S. at 50, 111 S.Ct. at 2136, 115 L.Ed.2d at 49. The Court determined bad faith conduct was not covered by the Federal Rule 11 sanctioning provisions. *Id.; see also Corley v. Rosewood Care Ctr., Inc.*, 142 F.3d 1041, 1058–59 (7th Cir.1998) (Court determined no bad faith conduct and thus was necessary to impose any sanctions according to Federal Rule 11 rather than inherent powers). The Court in *Chambers* went further

and noted that a federal court was not forbidden from using its inherent powers rather than a statute or rule, even if some of the conduct was covered by a statute or rule. *Id.* 501 U.S. at 50, 111 S.Ct. at 2136, 115 L.Ed.2d at 49. For example, the Court noted Federal Rule 11 could have been used to sanction the party for "filing 'false and frivolous pleadings.'" *Id.* However, the Court determined that the "entire course of conduct throughout the lawsuit evidenced bad faith and an attempt to perpetrate a fraud on the court, and the conduct sanctionable under the Rules was intertwined within conduct that only the inherent power could address." *Id.* 501 U.S. at 51, 111 S.Ct. at 2136, 115 L.Ed.2d at 49.

In *Pope*, the court found that the actions of a party to the litigation "constitute[d] bad faith and abusive conduct ... and an attempt to perpetrate a fraud on the court." 138 F.R.D. at 683. Therefore, the court concluded it was appropriate for it to "impose sanctions against plaintiff pursuant to its inherent equitable power to do so." *Id.* The court arrived at this conclusion after analyzing the various Federal Rules, including Federal Rule 11, under which sanctions could be imposed. *Id.* at 681–82.

In *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir.1989), the court defined fraud on the court as occurring when "it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense." Further, the court noted "that a federal district court possesses the inherent power to deny the court's processes to one who defiles the judicial system by committing a

fraud on the court." *Id.* Among the bad faith conduct apparent in the case was the filing of false pleadings and documents. *Id.*

▮ In the instant case, the trial court concluded the "[f]acts supporting sanctions for filing false pleadings, false affidavits and perjured testimony must meet the clear and convincing standard of proof." We find that was the appropriate standard of proof and that the evidentiary documentation and testimony before the court met that standard and provided substantial evidence to support the judgment in issue. Additionally, we note that the actions found by the trial court to have been committed by Appellant were not fully covered by Rule 55.03, and thus justified the imposition of sanctions under the court's inherent powers. *See Foster,* 661 S.W.2d at 631. Based on the fraud, false pleadings, false affidavits and perjured testimony found by the trial court, the use of its inherent power was appropriate as the "judicial function [was] integrally threatened." *Higgins,* 778 S.W.2d at 26. Appellant's first point is denied.

Appellant's second point charges that the trial court abused its discretion in setting aside the previously entered judgment by failing to identify good cause for the action. In Appellant's notice of appeal, the only judgment or order from which he appeals is the July 3, 2000 judgment for sanctions. The notice of appeal does not list the September 22, 1998 order, which in part granted Respondent's motion to set aside the previously entered judgment.

▮ Pursuant to Rule 81.08, the judgment or order from which the appeal is made, is among the items that must be specified in the notice of appeal. *See* Rule 81.08(a). Missouri appellate courts favor a disposition on the merits where possible, particularly when such "disposition of the merits is not hampered by the rule viola-

tion." *Williams v. MFA Mut. Ins. Co.,* 660 S.W.2d 437, 439 (Mo.App. E.D.1983). Further, Missouri cases have shown a leniency with respect to the failure to specify the judgment or order appealed from, so long as the lack of specificity does not prejudice the other party. *See id.* However, that leniency has occurred primarily in cases where the appellant sought to appeal one judgment or order; Missouri appellate courts have not shown such leniency when the notice of appeal only listed one judgment or order, but the points on appeal referred to more than one judgment or order. *See Anderson v. Anderson,* 869 S.W.2d 289, 292 (Mo.App. S.D.1994); *Erickson v. Pulitzer Pub. Co.,* 797 S.W.2d 853, 858 (Mo.App. E.D.1990).

In *Erickson,* the appellant stated in his notice of appeal that he was appealing from a grant of summary judgment for the respondent and attached the order granting the summary judgment motion to the notice of appeal; however, he left the area marked "Judgment or Order Appealed From" blank. 797 S.W.2d at 858. In addition, no reference was made in his notice of appeal to an earlier judgment, although an alleged error in that judgment was the basis for one of his points on appeal. *Id.* The appellate court determined that since the notice of appeal only referred to the grant of the summary judgment, its review was confined to that one judgment. *Id.*

In *Anderson,* the appellant's notice of appeal only referred to the trial court's denial of his motion to obtain relief pursuant to Rule 74.06, and not to an earlier default judgment entered by the court. 869 S.W.2d at 291–92. Similar to *Erickson,* the appellant in *Anderson* complained about the default judgment in some of his points of alleged error. *Id.* at 292. The appellate court followed *Erickson* and determined it must confine "its review to the

judgment specified in the notice of appeal." *Id.*

Our situation here tracks very closely to the circumstances described in *Erickson* and *Anderson;* thus, we will follow their precedent. The judgment is affirmed.